566 So.2d 279 (1990)
Magda MENENDEZ and Americo Menendez, As the Natural Parents of Adaris Menendez, a Minor, Appellants,
v.
PUBLIC HEALTH TRUST OF DADE COUNTY, Florida, D/B/a Jackson Memorial Hospital, University of Miami, and Mary O'Sullivan, M.D., Appellees.
No. 89-2332.
District Court of Appeal of Florida, Third District.
July 24, 1990.
Rehearing Denied September 6, 1990.
*280 George W. Chesrow, Coral Gables, and Orlando Ruiz, Miami, for appellants.
Thornton, David, Murray, Richard & Davis and Aurora Ares and Sheryl E. Berkowitz, Fowler, White, Burnett, Hurley, Banick & Strickroot and Steven E. Stark, Miami, for appellees.
Before HUBBART, NESBITT and BASKIN, JJ.
BASKIN, Judge.
The Menendezes appeal an adverse summary judgment entered in a medical malpractice action. We affirm as to Dr. O'Sullivan and the University of Miami; we reverse as to Public Health Trust of Dade County, Florida, d/b/a Jackson Memorial Hospital [Jackson], and remand for further proceedings.
On June 8, 1981, Magda Menendez was admitted to Jackson. She was hemorrhaging during a pregnancy and suffering from gestation diabetes. She remained hospitalized until she was discharged on July 8, 1981. On July 14, 1981, Magda was again admitted to Jackson because she was hemorrhaging. On July 18, 1981, the doctors at Jackson performed a Cesarean delivery of a baby girl. The birth of baby Adaris was approximately ten weeks premature. When the baby was born, Magda was told that the baby was delivered "without any complications" and was born in "good condition," even though she had to be ventilated and had low Apgar scores. Following her birth, Adaris was taken to the intensive care unit. She remained at Jackson until August 29, 1981.
In April of 1982, a doctor at the University of Miami Mailman Center told Magda that Adaris had cerebral palsy. The doctor's report indicated that Adaris had congenital brain damage, as well as cerebral palsy, and numerous other medical problems. In January of 1984, a physical therapist, who had not reviewed any of the medical records from Jackson, told Magda that she thought Magda's bleeding during pregnancy had caused Adaris to lose oxygen and "that's what caused her brain damage."
On July 16, 1985, Magda consulted a lawyer. On September 30, 1985, the Menendezes filed a complaint for damages for medical malpractice against the hospital, the University of Miami, and a doctor on the university's medical school faculty, alleging that the obstetrical care rendered to Magda prior to the birth of her daughter fell below the reasonable standard of care and resulted in Adaris suffering irreversible brain and nerve damage.
Defendants denied the allegations of negligence and asserted the defenses of the statutes of limitations and repose. Plaintiffs maintained that the statute of limitations had been tolled by fraud, misrepresentation, and concealment practiced by defendants. Defendants moved for summary judgment, and after conducting a hearing, the trial court entered summary judgment in favor of all defendants. The trial court decided that plaintiffs' claims were barred *281 by the four-year statute of repose contained in section 95.11(4)(b), Florida Statutes (Supp. 1980). The trial court denied plaintiffs' motion for rehearing. Plaintiffs instituted this appeal.
Section 95.11(4)(b), Florida Statutes (Supp. 1980), governs the actions against Dr. O'Sullivan and the University of Miami. See Jaar v. University of Miami, 474 So.2d 239 (Fla. 3d DCA 1985), review denied, 484 So.2d 10 (Fla. 1986). That section provides a two-year statute of limitations from the time the cause of action is or should have been discovered, and a four-year statute of repose from the "date of the incident or occurrence out of which the cause of action accrued" for medical malpractice actions. Additionally,
[i]n those actions ... in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.
§ 95.11(4)(b), Fla. Stat. (Supp. 1980). The timeliness of a lawsuit filed under this section is measured from the date the plaintiff knows or should know, through the exercise of due diligence, of either the negligent act causing the injury or of the physical injury resulting from the negligent act. Barron v. Shapiro, 565 So.2d 1319 (Fla. 1990); Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976); Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978); but see Elliot v. Barrow, 526 So.2d 989 (Fla. 1st DCA), review denied, 536 So.2d 244 (Fla. 1988); Schafer v. Lehrer, 476 So.2d 781 (Fla. 4th DCA 1985); Phillips v. Mease Hosp. & Clinic, 445 So.2d 1058 (Fla. 2d DCA), review denied, 453 So.2d 44 (Fla. 1984). A plaintiff who lacks actual knowledge of negligence is deemed to have constructive notice of the contents of medical records that disclose a possibly negligent act. Nardone; compare Nolen v. Sarasohn, 379 So.2d 161 (Fla. 3d DCA 1980) (knowledge of contents of medical records not imputed to patient when records contain many technical terms that an ordinary person could not be expected to understand); Testone v. Adams, 373 So.2d 362 (Fla. 1st DCA 1979), cert. denied, 383 So.2d 1189 (Fla. 1980) (same). However, when defendants actively misrepresent or conceal their negligence, or conceal known facts relating to the cause of the injury, the statute of limitations does not begin to run until plaintiff is able to discover the negligence. Nardone; Almengor; Buck v. Mouradian, 100 So.2d 70 (Fla. 3d DCA), cert. denied, 104 So.2d 592 (Fla. 1958).
Although plaintiffs assert that defendants attempted to conceal their negligence,[1] such concealment did not prevent plaintiffs from discovering the negligence within the four-year period of the statute of repose. Pisut v. Sichelman, 455 So.2d 620 (Fla. 2d DCA 1984). Even if the disclosure of the child's condition in the medical records were insufficient to furnish notice of defendants' negligence, see Almengor, plaintiffs were informed of possible negligence as early as January of 1984, when the physical therapist informed plaintiffs that she thought the mother's hemorrhaging during pregnancy caused the child's brain damage.[2] Despite their knowledge of possible negligence at that time, plaintiffs took no action until approximately eighteen months later, when they consulted an attorney, two days before the expiration of the statute; however, they did not file an action for an additional two months. Under the circumstances, the trial court did not err in applying the statute of repose contained in section 95.11(4)(b) to bar plaintiffs' action. Cates v. Graham, 427 So.2d 290 (Fla. 3d DCA 1983), decision approved, 451 So.2d 475 (Fla. 1984); Pisut.
*282 As to Jackson, however, we hold that the trial court erred in applying the provisions of section 95.11(4)(b). Section 768.28(11), Florida Statutes (Supp. 1980), which provides a four-year limitation without a period of repose for the filing of a negligence action against a state agency, is the appropriate statute of limitations in negligence actions against Jackson, see Jaar; Whitney v. Marion County Hosp. Dist., 416 So.2d 500 (Fla. 5th DCA 1982), a state agency. See Whitney. Finding that genuine issues of material fact exist as to when plaintiffs knew or should have known of either the injury or of the possible negligence[3] for 768.28(11) purposes, we remand for the trier of fact to determine this issue.
For these reasons, we affirm the summary judgment as to Dr. O'Sullivan and the University of Miami, we reverse as to Public Health Trust of Dade County, Florida, d/b/a Jackson Memorial Hospital, and we remand for further proceedings consistent with this opinion.
NOTES
[1] We do not decide whether defendants did conceal any negligence, or even whether negligence occurred.
[2] Although the physical therapist did not voice her opinion of the cause of the child's injuries until this date, the severity and multiplicity of the child's disabilities were known to the parents much earlier. Because this appeal is before us in the possture of a summary judgment, however, we view the facts in the light most favorable to plaintiffs. Moore v. Morris, 475 So.2d 666 (Fla. 1985).
[3] A defect at birth does not necessarily put the parents on notice of injury or of possible negligence. Moore; Almengor.